____FILED ____ENTERED
____LODGED ____RECEIVED

JUL 2 7 2015

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY_____DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DWANE TAVONE McKENZIE, #353-309    *

Petitioner                                          *

v                                                   *       Civil Action No. RDB-13-1322

JOHN PHILLIP MORGAN,                               *
THE ATTORNEY GENERAL OF THE
  STATE OF MARYLAND                                *

Respondents                                         *
                                                   ***

## MEMORANDUM OPINION

Self-represented Petitioner Dwayne Tavone McKenzie[1] filed this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Respondents, by their counsel, filed a Response seeking dismissal of the Petition, arguing that two of the four claims presented were unexhausted. (ECF 6). McKenzie was granted an opportunity to reply. (ECF 7). McKenzie then filed a Motion to Amend the Petition by withdrawing the unexhausted claims. (ECF 8).[2] This Court granted Petitioner's Motion to Amend and ordered Respondents to answer the Petition as amended. (ECF 9). After the Response was filed, McKenzie was granted an opportunity to reply. (ECF 10, 11). McKenzie subsequently was granted additional time to reply. (ECF 13). No Reply was filed.

The matter is ripe for disposition. After considering the pleadings, exhibits, and applicable law, this Court finds a hearing unnecessary. *See* Local Rule 105.6 (D. Md. 2014);

---

[1] Petitioner is also known as Dwayne T. McKenzie and Dwane Tavonne McKenzie. (ECF 6-2).

[2] McKenzie conceded in the Petition that he had yet to present in state court his claims that he was denied his Fifth Amendment right to confront a witness and his appellate counsel was ineffective for failing to raise this issue on appeal. (ECF 1, p. 9).

Rule 8, "Rules Governing Section 2254 Proceedings in the United States District Courts."

## BACKGROUND

On May 28, 2008, a jury sitting in the Circuit Court for Baltimore County convicted McKenzie of attempted second-degree murder, two counts of first-degree assault, and related weapons offenses. (ECF 6-1, 6-2). [3] McKenzie was sentenced to 45 years imprisonment. *Id.*

The Court of Special Appeals of Maryland affirmed McKenzie's convictions in an unreported opinion filed on February 21, 2012. (ECF 6-4). McKenzie filed a pro se Petition for a Writ of Certiorari which was denied by the Court of Appeals of Maryland on June 25, 2012. McKenzie has not filed state post conviction proceedings. [4]

The Court of Special Appeals of Maryland summarized the facts adduced at trial as follows:

> At trial, the State called Nicole Findley, who testified that, at approximately 2:00 a.m. on November 17, 2007, she went to a "strip club" known as "Exclusives." There, she encountered appellant, with whom she was familiar from meeting on a few earlier occasions, and his friend, Jerry Walker. While appellant, Walker and Findley "[w]ere . . . hanging out" in the club's lobby, Jiovan Purviance, a friend of Findley's brother, entered the club. While in the club's lobby, an argument ensued between appellant and Purviance. Appellant then left the club and, shortly thereafter, Purviance left as well. Later, Purviance returned to the club and joined Findley.
>
> At approximately 4:00 a.m., Findley left the club with Purviance. While walking towards her car, she heard gunshots. She entered her car and began to "pull off" when Purviance "limp[ed] across the street" and entered the passenger side of her vehicle. Findley then testified she saw appellant fire a gun into the car, striking her once in the hand and Purviance several times. She drove to Northwest Hospital, where she received treatment for her wound and met with police detectives. Reviewing a photo array, Findley selected a photo of appellant and identified him as "the shooter."

(ECF 6-4, pp. 2-3).[5]

---

[3] All exhibits were filed by Respondents. Pagination is to the electronic citation unless otherwise indicated.

[4] http://casesearch.courts.state.md.us/casesearch/inquirySearch.jis.

[5] A third individual, Siegfried Presberry, was also shot. (ECF 7, pp. 157, 160).

2

## PETITIONER'S CLAIMS

McKenzie seeks vacatur of his conviction and sentence. He presents two claims of trial court error. The first claim is the trial court erred by denying his motion to suppress. The second claim is the trial court erred when it failed to instruct the jury on imperfect self-defense and attempted manslaughter. (ECF 1).

## ANALYSIS

Section 2254 states that a district court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The statutory framework of the federal habeas statute sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447, 455 (2005). The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, __U.S.__, 131 S.Ct. 1388, 1398 (2011) (internal quotation marks and citations omitted); *see also Harrington v. Richter*, 562 U.S. 86, 102 (2011)("If this standard is difficult to meet, that is because it was meant to be.").

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). Under the "unreasonable application" analysis pursuant to 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Williams*, 529 U.S. at 411). "Rather, that application must be objectively unreasonable." *Id.* Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington*, 562 U.S. at 101 (quoting *Williams*, 529 U.S. at 410).

Further, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id.* (internal quotation marks and citation omitted).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where

4

the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.* at 379 (quoting 28 U.S.C. § 2254(e)(1)).

### A. CLAIM THE TRIAL COURT ERRED BY DENYING THE MOTION TO SUPPRESS

McKenzie filed a pre-trial motion to suppress all of his admissions, statements or confessions that he made on November 19, 2000, following his arrest and transport to Baltimore County Police headquarters. (ECF 6-4, p. 3; *see also* Exhibit 7, p. 99).[6] McKenzie gave a verbal statement, a written statement, and also provided a 45 minute videotaped statement. *Id.* at 109-110.

At the suppression hearing held on May 21, 2008, Detective Trenary was called by the State to testify. (ECF 7). Trenary testified that on November 19, 2007, McKenzie was advised of his rights orally and in writing and signed a *Miranda* form. *Id.* at 101-104. Trenary testified that McKenzie never requested an attorney and indicated he was willing to waive his rights and speak to detectives. *Id.* at 105-106, 122. Trenary testified that had McKenzie requested counsel, "the interview would have been over." *Id.* at 105, 122.

McKenzie took the stand and testified that he told the detectives that he was at the club, but knew nothing about the shooting. *Id.* at 128. He testified that he signed a *Miranda*[7] rights form. *Id.* at 128-129. McKenzie testified that after he signed the form, Trenary continued questioning him. *Id.* at 131. McKenzie said that he understood that he could ask for a lawyer,

---

[6] Respondents' Exhibits 7-12 are not part of the electronic record and are separately filed.

[7] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

5

but that he believed he would have to pay for one himself. *Id.* at 130. McKenzie said that the detectives then began questioning him about the case, but that after a few questions, he "basically told [Detective Trenary] that [he] wanted a lawyer[.]". *Id.* at 131). McKenzie was "[a]bsolutely" positive that when he asked for a lawyer, only Trenary was in the room with him, and that the detective responded by saying that McKenzie was not charged with anything, so "it wouldn't be no need for a lawyer." *Id.* at 131.

McKenzie testified that after he gave his oral and written statement, he asked Detective Anderson for an attorney. *Id.* at 132-133. On cross-examination, McKenzie testified that, while being videotaped, he asked for an attorney. *Id.* at 148.

Following the McKenzie's testimony, Detective Trenary was recalled to the stand:

> [THE COURT:] Detective, the day that you interviewed . . . [McKenzie], was Detective Anderson with you at that time?
>
> [DETECTIVE TRENARY:] Yes sir.
>
> [THE COURT:] Was he ever with [McKenzie] when you weren't there?
>
> [DETECTIVE TRENARY:] I may have left the room at one time, yes, when we were recording the interview[.]
>
> \*\*\*\*\*\*\*\*\*\*\*\*\*\*
>
> [THE COURT:] And was he there when he gave the initial oral statement?
>
> [DETECTIVE TRENARY:] He was in the interview room with me, yes.
>
> [THE COURT:] In and out?
>
> [DETECTIVE TRENARY:] No, we —
>
> [THE COURT:] Were you both there together the whole time?
>
> [DETECTIVE TRENARY:] — were both there together.
>
> [THE COURT:] The whole time with him?

6

> [DETECTIVE TRENARY:] Yes sir.
>
> [THE COURT:] And what about the written statement, was there ever a time when [Detective] Anderson and [McKenzie] were alone when you weren't there?
>
> [DETECTIVE TRENARY:] Not that I recall.
>
> [THE COURT:] [D]id [appellant] ever in your presence when you were with Detective Anderson ask for a lawyer?
>
> [DETECTIVE TRENARY:] No.

(ECF 6-4, pp. 3-5).

The trial court denied motion to suppress. (ECF 7, p. 154). At trial, Detective Trenary testified as to McKenzie's statements. (ECF 8, pp. 173-178, 183-185, 187-189).

On direct appeal, the Court of Special Appeals of Maryland reviewed McKenzie's claim of trial court error, finding no error in the trial court's admission of the oral and written statements. The Court found admission of the video statement constituted error, but ruled it harmless error, explaining:

> During the interview, he gave the detectives an oral statement, a written statement, and a videotaped statement. In the oral statement, he stated that, after he saw Purviance at the club, he "went home and got his gun[.]" Upon returning to the club, appellant argued with Purviance in the parking lot, "pull[ed] his gun out[,] and start[ed] firing." In the written statement, however, appellant stated "that he had gotten into scuffle with [Purviance] and pulled the gun from [Purviance's] waistband[.]" Finally, in the videotaped statement, appellant again stated that he [appellant] "did bring his gun himself and had it on him[.]"
>
> *************
>
> Appellant contends that the court erred in denying the motion to suppress. He claims that, because "the State chose not to put Detective Anderson on the stand during the suppression hearing" to refute appellant's testimony, the State "failed to carry" its "burden of proving that [appellant's]statement to the police while in custody was voluntary[.]"
> *************

7

The Supreme Court in *Miranda v. Arizona*, 384 U.S. 436 (1966), mandated that an accused must be adequately and effectively appraised of his or her rights and the exercise of those rights must be fully honored. *See also Pappaconstantinou v. State*, 352 Md. 167, 172 (1998); *Jackson v. State*, 141 Md. App. 175, 186 (2001). One of an accused's rights is the right to assistance of counsel during an interrogation that lends itself to eliciting an incriminating statement. *Id.* Therefore, a "request for an attorney has a virtually foreclosing effect on any further interrogation or any further conversation that could result in a resumption of interrogation" between the accused and the police. *Wallace v. State*, 100 Md. *App.* 235, 237 (1994). In this case, we are asked to consider whether the State adequately rebutted the Appellant's allegations that his request for an attorney was not honored.

With respect to the oral and written statements, we are persuaded that the trial court did not err in denying appellant's motion to suppress. Detective Trenary testified that, during the giving of these statements, he was with appellant at all times, and appellant did not "ask for a lawyer." This testimony was sufficient to refute appellant's contention as to the oral and written statements. *See Streams*, 238 Md. at 281-82 (the State may "meet its burden of showing that" a confession was voluntary "if one credible witness can testify from personal observation that nothing was said or done prior to and during the obtention of the confession to mar or destroy its voluntary character").

But, with respect to appellant's videotaped statement, even after drawing all reasonable inferences in the light most favorable to the State, we are persuaded that the trial court did err in denying appellant's motion to suppress. Because the State did not call Detective Anderson to testify at the suppression hearing or request that the court review the videotape,[2] the State failed to refute appellant's contention as to that statement. *See Jackson v. State*, 141 Md. App. 175, 193 (2001) (State may use "videotapes or recordings" to "establish[ ] whether" police officers made "promises or threats" to a defendant). Either could have revealed whether appellant requested an attorney during an interval that Detective Trenary admittedly was not present with Detective Anderson and appellant. Nevertheless, we are persuaded that the error is harmless.

************

In this case, Findley testified at trial that appellant shot her and Purviance. Detective Trenary then testified to appellant's oral statement that appellant "went home and got his gun," returned to the club and, following an argument with Purviance in the parking lot, "pull[ed a] gun out[,] and start[ed] firing." That testimony was properly admitted. The videotaped statement that "[appellant] did bring his gun himself and had it on him," although erroneously introduced, merely reiterated the oral statement the appellant made to the police and was generally consistent with his testimony at trial, discussed supra. Therefore, we are persuaded that the properly admitted evidence so outweighs the allegedly

prejudicial nature of the videotaped statement that there is no reasonable possibility the jury would have found differently had the videotape been excluded.

(ECF 6, pp. 4-5). [8]

McKenzie generally claims the trial court erred by denying his motion to suppress. He does not claim specifically that Maryland's intermediate appellate court erred in admitting his oral and written statements or take issue with the finding of harmless error in the admission of his videotape statement.

In light of the foregoing adjudication of the claim on the merits, this Court may not grant habeas relief thereon unless McKenzie satisfies his heavy burden under Section 2254(d). *See Cullen v. Pinholster*, 131 S.Ct. at 1398. A petitioner cannot receive habeas relief from a trial-type error of the sort at issue here unless the "error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 622 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)); *see also Cooper v. Taylor*, 103 F.3d 366, 371 (4th Cir. 1996) (en banc) ("As the court in *Brecht* admonished, habeas petitioners 'are not entitled to habeas relief based on trial error unless they can establish that it resulted in "actual prejudice."' The verdict must have been affected." (internal citation and emphasis omitted) (quoting *Brecht*, 507 U.S. at 637)).

---

[8] The Court of Special Appeals observed the trial court did not view the videotape before ruling on the Motion to Suppress. The forty-five minute videotape was shown to the jury at trial. (ECF 6-4, p. 3 n. 1). The Court of Special Appeals stated:

> Our Statement presumes that the videotaped recording was uninterrupted when Detective Trenary left the room. If so, it would have recorded any exchange between Detective Anderson and appellant [McKenzie] when Detective Trenary was absent. If there was no recording of the interval where appellant allegedly requested an attorney, a review of the videotape would be insufficient to rebut appellant's contention.

(ECF 6-4, p. 7 n. 2).

Respondents correctly note that a constitutional error is harmless when "it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *Neder v. United States*, 527 U.S. 1, 15 (1999) (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)); *see also Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986). In *Mitchell v. Esparza*, 540 U.S. 12, 17–18 (2003), the Supreme Court opined that, where a state court found a constitutional error harmless, habeas relief could not be granted unless the state court applied harmless-error review in an "objectively unreasonable" manner.

In McKenzie's case, the state court provided a well-reasoned harmless error analysis setting forth why the trial court's error had no impact on the verdict obtained. McKenzie's guilt is amply supported by the record. McKenzie gave two other statements, and the erroneously admitted evidence was cumulative of other evidence that proved convincingly that McKenzie had committed the offenses for which he was found guilty. This ground provides no basis for relief under 28 U.S.C. § 2254(d).

### B. CLAIM OF TRIAL COURT ERROR IN INSTRUCTING THE JURY

McKenzie's second claim is trial court error for failing to instruct the jury on imperfect self-defense and attempted voluntary manslaughter. (ECF 1). Respondents correctly note this claim is not cognizable on federal habeas review because McKenzie fails to allege a violation of a federal constitutional right or provision violated by the trial court's omission. *See* 28 U.S.C. § 2254(a) (authorizing federal courts to entertain a state prisoner's habeas petition "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States").

Even if this claim were deemed cognizable, however, it is subject to dismissal under the doctrine of procedural default. Where a petitioner has failed to present a claim to the highest

state court with jurisdiction to hear it, whether it be by failing to raise the claim in post-conviction proceedings or on direct appeal, or by failing to timely note an appeal, the procedural default doctrine applies. *See Coleman v. Thompson*, 501 U. S. 722, 749-50 (1991) (failure to note timely appeal); *Murray v. Carrier*, 477 U.S. 478, 489-91 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U.S. 41, 46 (1972) (failure to raise claim during post-conviction); *Bradley v. Davis*, 551 F. Supp. 479, 481 (D. Md. 1982) (failure to seek leave to appeal denial of post-conviction relief). A procedural default also may occur where a state court declines "to consider the merits [of a claim] on the basis of an adequate and independent state procedural rule." *Yeatts v. Angelone*, 166 F.3d 255, 260 (4th Cir. 1999).

The Fourth Circuit has explained:

> If a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim. *See Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). A procedural default also occurs when a habeas petitioner fails to exhaust available state remedies and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Id.* at 735 n.1.

*Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998).

If a procedural default has occurred, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits; or (2) that failure to consider the claim on the merits would result in a miscarriage of justice, *i.e.* the conviction of one who is actually innocent.[9] *See Murray*, 477 U.S. at 495-96; *Breard*, 134 F.3d at 620.

---

[9] Habeas petitioners may use an actual innocence claim to excuse the procedural default of a separate constitutional claim upon which they request habeas relief. *See Murray v. Carrier*, 477 U.S. 478, 496 (1986). "[When] a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Id.*; *see also Reid v. True*, 349 F.3d 788, 806 (4th Cir. 2003). Petitioners who wish to use a claim of actual innocence as a gateway to

11

"Cause" consists of "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim in state court at the appropriate time." *Breard,* 134 F.3d at 620 (quoting *Murray,* 477 U.S. at 488). Even where a petitioner fails to show cause and prejudice for a procedural default, a court must still consider whether it should reach the merits of a petitioner's claims in order to prevent a fundamental miscarriage of justice. *See Schlup v. Delo,* 513 U. S. 298, 314 (1995).

McKenzie raised this claim on direct appeal, where it was rejected by the Court of Special Appeals of Maryland as unpreserved for appellate review. The Court of Special Appeals stated:

> At trial, appellant testified that, prior to the shooting, he "decided on going to Exclusives . . . with a couple of [his] friends[.]" After entering the club and speaking to Purviance, appellant left the club and retrieved a "[.] 9 millimeter" gun from "the backyard of a neighbor." Returning to the club, appellant became involved in a "commotion," and was "pushed out the door" by the club's "bouncers." Outside the club, Purviance "rush[ed] towards" appellant, "went to go inside of his waistband area[,] and . . . made a motion . . . to . . . pull[] out" what appeared "to [appellant] to be a gun."
>
> During the trial court's instructions to the jury, the judge called the parties to the bench, and the following colloquy occurred:
>
>> THE COURT: Do we agree on the record that you don't wish me to instruct on [a]ttempted [v]oluntary [m]anslaughter?[]
>>
>> [DEFENSE COUNSEL]: Judge, I don't want to waive it.... I don't plan to argue it but I'm a little reluctant to waive it.
>>
>> THE COURT: Oh, I'm, I'm not asking you to waive it. You're not asking for it because you're not going to argue.
>>
>> [DEFENSE COUNSEL]: Right.
>>
>> THE COURT: I agree it confuses it so all right, fine.

---

raising an otherwise defaulted constitutional claim must demonstrate by a preponderance of the evidence that a reasonable juror could not have convicted the petitioner in light of the new evidence. *See Buckner v. Polk,* 453 F.3d 195, 199-200 (4th Cir. 2006). Petitioner does not meet this standard.

12

(ECF 6-4, pp. 9-1; *see also* Exhibit 10, pp. 10-11).

Maryland's intermediate appellate court determined the trial court erred by failing to instruct the jury on attempted voluntary manslaughter after defense counsel explicitly stated that he did not waive the right to an attempted voluntary manslaughter instruction.

(ECF 6-4, p. 11). The Court explained:

> "[W]hen no timely objection to the jury instructions is made in the trial court, this Court ordinarily will not review a claim of error based on those instructions." *Alston v. State*, 414 Md. 92, 111 (2010). "The general rule is that the failure to object to a jury instruction at trial results in a waiver of any defects in the instruction, and normally precludes further review of any claim of error relating to the instruction." *Id.* (quoting *State v. Rose*, 345 Md. 238, 245 (1997)). Objections to jury instructions must comply with Maryland Rule 4-325(e), which states, in relevant part:
>
>> No party may assign as error the giving or the failure to give an instruction unless the party objects on the record promptly after the court instructs the jury, stating distinctly the matter to which the party objects and the grounds of the objection. Upon request of any party, the court shall receive objections out of the hearing of the jury. An appellate court, on its own initiative or on the suggestion of a party, may however take cognizance of any plain-error in the instructions, material to the rights of the defendant, despite a failure to object.
>
> Therefore, to properly preserve this issue for appellate review, appellant must have promptly objected to the trial court's failure to give the instruction and distinctly stated the grounds for the objection. *See Kissinger v. State*, 117 Md. App. 372 (1997), *cert. denied*, 348 Md. 333 (1998).

*******************

> In this case, the issue of whether an attempted voluntary manslaughter instruction was to be included was raised by the trial court, not by appellant's counsel. When prompted, appellant's counsel took no exception to the court's intent to omit that instruction, stating merely that counsel "d[id]n't plan to argue it but [was] a little reluctant to waive it." Therefore, we are not persuaded that appellant's counsel even wanted the trial court to deliver the instruction. Moreover, Maryland Rule 4-325(e) requires a party "to object on the record promptly after the court instructs the jury . . . ." (Emphasis added). The exchange regarding an attempted voluntary manslaughter instruction came before the jury

> was instructed. Following the trial court's instruction to the jury, appellant's counsel made no objection to the instructions.
>
> But, even if we were persuaded that appellant counsel's statement regarding waiver was sufficient to notify the trial court that appellant was requesting an attempted voluntary manslaughter instruction, no objection was made for failing to give the instruction after the jury was instructed. Therefore, appellant's claim of error was not preserved for our review.

(ECF 6-4, pp. 13-14).

The Court of Special Appeals' determination is sufficient, absent demonstration by McKenzie of cause and prejudice or of actual innocence to find this claim procedurally defaulted on federal habeas review. Further, McKenzie does not state how he was injured by the lack of instruction of imperfect self-defense on voluntary manslaughter. For these reasons, this claim will be denied and dismissed as procedurally defaulted.

## CONCLUSION

For the above stated reasons, this Court will, by separate Order, deny and dismiss the Petition for Writ of Habeas Corpus. This Court finds there has been no substantial showing of the denial of a constitutional right, and a Certificate of Appealability shall not issue. *See* 28 U.S.C. § 2253(c)(2).

July 27, 2015
Date

RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE